Matter of Dourdounas v City of New York (2025 NY Slip Op 01671)

Matter of Dourdounas v City of New York

2025 NY Slip Op 01671 [44 NY3d 34]

March 20, 2025

Wilson, Ch. J., J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 8, 2025

[*1]

In the Matter of George Dourdounas, Appellant,
v
City of New York et al., Respondents.

Argued February 12, 2025; decided March 20, 2025

PROCEDURAL SUMMARY

Appeal, by permission of the Court of Appeals, from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered December 8, 2022. The Appellate Division affirmed a judgment (denominated order) of the Supreme Court, New York County (Lynn R. Kotler, J.; op 2021 NY Slip Op 34264[U] [2021]), entered in a proceeding pursuant to CPLR article 78, which had denied the petition and granted respondents' motion to dismiss the proceeding as time-barred.

Matter of Dourdounas v City of New York, 211 AD3d 466, affirmed.

HEADNOTE

Schools
 - Teachers
 - Breach of Collective Bargaining Agreement

Petitioner teacher's CPLR article 78 proceeding alleging that respondent employer breached a collective bargaining agreement (CBA) by denying his claim for a retirement incentive was dismissed, as petitioner could not seek judicial review of a claim arising under the CBA against respondent without also alleging a breach of the duty of fair representation by the teachers' union. Unless the contract provides otherwise, claims arising exclusively from an alleged breach of a term in a CBA must be brought through a civil action for breach of contract and breach of fair representation by the union. Although plaintiff did exhaust the mandatory grievance procedure set out in the CBA, he did not allege a breach of the duty of fair representation by the union, nor did the CBA give teachers the right to pursue a contractual claim independent of the union. This rule is limited to claims arising solely under a CBA. Those claims exist only because of the agreement. The agreement, in turn, exists only because of the union. Limiting employees to the remedies established by the contract respects the outcome of the collective bargaining process and protects the union's ability to negotiate on behalf of employees moving forward. Even if petitioner had alleged a violation of the duty of fair representation, his claim arose exclusively from an alleged breach of the CBA and had to be resolved through the application of contract law, not through an article 78 claim.

POINTS OF COUNSEL

Glass & Hogrogian LLP, New York City (Bryan D. Glass of counsel), for appellant. The Appellate Division erred as a matter of law in affirming the dismissal of George Dourdounas' CPLR article 78 proceeding as untimely. His cause of action accrued upon the exhaustion of his grievance remedy, not upon the determination of the New York City Department of Education to withhold the separation incentive payment from him. (Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30; Matter of Eadie v Town Bd. of Town of N. Greenbush, 7 NY3d 306; Town of Oyster Bay v Kirkland, 19 NY3d 1035; Indemini v Beth Israel Med. Ctr., 4 NY3d 63; Lewis v Macchiarola, 53 NY2d 629.)
Muriel Goode-Trufant, Corporation Counsel, New York City (Rebecca L. Visgaitis, Susan Paulson, Richard Dearing and Claude S. Platton of counsel), for repsondent. This Court should affirm the dismissal of the CPLR article 78 proceeding. (Matter of Gooshaw v City of Ogdensburg, 67 AD3d 1288; People v Baxin, 26 NY3d 6; Roberts v Paterson, 19 NY3d 524; People v Fuentes, 12 NY3d 259; U.S. Bank N.A. v DLJ Mtge. Capital, Inc., 33 NY3d 84.)

{**44 NY3d at 36} OPINION OF THE COURT

Chief Judge Wilson.

Unionized public employees have rights granted in a collective bargaining agreement and may also have rights provided by statute or regulation. Confusing the source of rights can lead to problems, as illustrated by this appeal. Mr. Dourdounas's claim arises solely under the collective bargaining agreement (CBA) between the New York City Department of Education (DOE) and the United Federation of Teachers (UFT). That agreement contains a mandatory grievance process, which Mr. Dourdounas followed. The CBA does not provide employees with the authority to enforce the agreement beyond the grievance process. Upon his exhaustion of the grievance process, however, Mr. Dourdounas brought this CPLR article 78 proceeding for review of an administrative decision. That was not proper.
The proper path is set forth in Ambach (Matter of Board of Educ., Commack Union Free School Dist. v Ambach, 70 NY2d 501, 508 [1987]). There, we held that when a claim arises under a collective bargaining agreement that creates a mandatory grievance process, the employee
"may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract. Unless the contract provides otherwise, only when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer" (id.).
Allegations that an employer has breached the collective bargaining agreement are contract claims that may not be resolved in an article 78 proceeding (see Abiele Contr. v New York City School Constr. Auth., 91 NY2d 1, 7-8 [1997]). Thus, when an employee [*2]alleges that an employer has breached a term in a collective bargaining agreement, the proper mechanism is a plenary action alleging both breach of contract by the employer and breach of the duty of fair representation by the union (see Matter of Obot [New York State Dept. of Correctional Servs.], 89 NY2d 883, 886 [1996]).
Although Mr. Dourdounas exhausted the grievance process, he has not alleged a breach of the duty of fair representation. His claim should therefore be dismissed, though on different grounds than those relied on by the Appellate Division.{**44 NY3d at 37}
I.
In September 2012, Mr. Dourdounas, a high school math teacher, was assigned to the Absent Teacher Reserve (ATR). The ATR, which was agreed to in collective bargaining between the DOE and the UFT, is a pool of New York City teachers whose teaching positions were eliminated for reasons that do not provide cause for termination. ATR teachers are temporarily assigned to fill gaps in New York City schools and are removed from the ATR pool if they are permanently assigned to a school. The CBA authorizes the DOE to offer ATR members "a voluntary severance program in an amount to be negotiated by the parties."
During the 2016-2017 school year, Mr. Dourdounas was temporarily assigned to several schools, including Bronx International High School. In February 2017, the principal at Bronx International asked Mr. Dourdounas if he would like to stay at the school until the end of the school year. Mr. Dourdounas agreed and notified the DOE. He believed he was still in the ATR pool.
On June 1, 2017, the DOE and the UFT signed an agreement modifying the CBA to create a new voluntary severance package for ATR teachers. Under the terms of the severance package, ATR teachers who retired by July 14, 2017, could choose between two retirement incentives: (1) a payment of $50,000, or (2) a payment of $35,000 and six months of health insurance. Only teachers in the ATR pool were eligible for the incentives.
In late June 2017, Mr. Dourdounas informed the DOE of his intent to resign on July 1 and requested the $50,000 retirement incentive. In July 2017, he realized he had not received the $50,000 payment. When he sent an inquiry to the DOE, he was told that he did not qualify for the retirement incentive because he had been permanently hired at Bronx International and was no longer in the ATR pool. Mr. Dourdounas maintains that he was never permanently hired by Bronx International and that he met the eligibility criteria for the incentive.
The CBA between the UFT and the DOE includes a mandatory grievance process through which a union member can raise a claim of "a violation, misinterpretation or inequitable application of any of the provisions of [the CBA]" or may claim that the employee "has been treated unfairly or inequitably by reason of any act or condition which is contrary to established{**44 NY3d at 38} policy or practice governing or affecting employees." The CBA makes clear that the grievance process "shall not apply to any matter as to which . . . a method of review is prescribed by law, or by any rule or regulation of the State Commissioner of Education having the force and effect of law." The CBA requires that "[g]rievances of employees within the bargaining unit shall be presented and adjusted" through a three-step process: (1) the union member may present a complaint to the head of school; (2) the UFT may appeal the head of school's decision to the Chancellor of the DOE; and (3) if dissatisfied, the UFT may submit the dispute to arbitration.
Mr. Dourdounas initiated the grievance process. At steps one and two, the head of Mr. Dourdounas's school and the Chancellor denied his grievance. Step three required Mr. Dourdounas to ask the UFT to arbitrate his grievance; he did so. On January 25, 2019, the UFT denied his request to bring the grievance to arbitration. Mr. Dourdounas appealed the UFT's denial of his request to arbitrate through the UFT's internal appeals process and received a final determination denying his request on October 29, 2020.
On February 26, 2021, Mr. Dourdounas commenced this article 78 proceeding against the City, alleging that it breached the contract between the UFT and DOE by denying him the retirement incentive.[FN1] The DOE moved to dismiss the petition on timeliness grounds, for failure to exhaust contractually required grievance procedures, for failure to join the UFT, and for failure to state a cause of action.
[*3]
Supreme Court dismissed Mr. Dourdounas's petition as time-barred because he commenced the proceeding more than four months after the DOE denied him the voluntary severance incentive (2021 NY Slip Op 34264[U] [Sup Ct, NY County 2021]). The Appellate Division affirmed on the same basis (211 AD3d 466, 467 [1st Dept 2022]). Applying the statute of limitations in CPLR 217 (1), which requires petitioners to bring article 78 claims within four months after a determination becomes "final and binding," the Appellate Division explained that the DOE's decision became final when Mr. Dourdounas{**44 NY3d at 39} was informed of it in July 2017 (id. at 466). According to the Appellate Division, although Mr. Dourdounas was "required to avail himself of the grievance procedure set forth in the CBA," doing so did not "toll the statute of limitations as to the underlying denial of the retirement incentive" (id. at 467). Because Mr. Dourdounas did not commence his article 78 proceeding within four months of the DOE's "final and binding" denial of the retirement incentive, the Appellate Division affirmed the dismissal of his petition. We now affirm on different grounds.
II.
Although the Appellate Division erred in its application of the exhaustion and finality requirements, we must affirm the dismissal for a different reason: under our decision in Ambach, Mr. Dourdounas may not seek judicial review of a claim arising under the CBA against the DOE without also alleging a breach of the duty of fair representation by the UFT.
The procedure applicable to an employee's claim depends on the source of the right or benefit the employee asserts. Statutory or constitutional claims are appropriately brought in an article 78 proceeding (see e.g. Matter of Johnson v Director, Downstate Med. Ctr., State Univ. of N.Y., 41 NY2d 1061 [1977]; Kahn v New York City Dept. of Educ., 18 NY3d 457, 472 [2012]). Claims arising exclusively from an alleged breach of a term in a collective bargaining agreement must be brought through a civil action for breach of contract (see Abiele, 91 NY2d at 7-8) and must meet the requirements set out in Ambach (70 NY2d at 508).
Mr. Dourdounas's claim arises under the CBA, as modified by the June 1, 2017 ATR Voluntary Severance Agreement, which creates a mandatory grievance process. It is therefore governed by our decision in Ambach, which establishes that an employee may not independently enforce the collective bargaining agreement unless (1) the union has breached its duty of fair representation or (2) the contract permits it (Ambach, 70 NY2d at 508; see also Berlyn v Board of Educ. of E. Meadow Union Free School Dist., 80 AD2d 572, 573 [2d Dept 1981], affd 55 NY2d 912 [1982]). Here, Mr. Dourdounas has not attempted to meet the requirements applicable to either path. Although Mr. Dourdounas did exhaust the mandatory grievance procedure set out in the CBA, he did not allege a breach of the duty{**44 NY3d at 40} of fair representation by the UFT.[FN2] Nor does the CBA give teachers the right to pursue a contractual claim independent of the UFT. Mr. Dourdounas's claim was therefore properly dismissed.
The rule established in Ambach and applied here is limited to claims arising solely under a collective bargaining agreement. Those claims exist only because of the agreement. The agreement, in turn, exists only because of the union. Limiting employees to the remedies established by the contract respects the outcome of the collective bargaining process and protects the union's ability to negotiate on behalf of employees moving forward (see Ambach, 70 NY2d at 509). As we explained in Ambach:
"[D]isrupting the contract's settlement procedures . . . has been viewed as threatening the union's authority as representative and weakening the individual employee's protection . . . . Only when a union has failed to represent an employee fairly—effectively depriving the employee of full use of the agreed procedures—does concern for employees' rights require that they be allowed to pursue grievances beyond the contractual mechanism" (id.).[FN3]
Because Mr. Dourdounas does not here allege a violation of the{**44 NY3d at 41} duty of fair representation, we must assume he has received the benefit of the collectively bargained grievance process and dismiss his claim.
III.
Even if Mr. Dourdounas had alleged a breach of the duty of fair representation{**44 NY3d at 42}, he could not have brought an article 78 petition to enforce the CBA.[FN4] When an employee seeks to challenge employer conduct for breach of a term in a collective bargaining agreement, the proper claim against the employer is for breach of contract. Although
" 'there are circumstances in which the same governmental action may constitute a violation of contract and also be of a character that would support a claim for article 78 relief' . . ., the issues presented in a contract action differ significantly from those presented in an article 78 proceeding. When the damage allegedly sustained arises from a breach of the contract by a public official or governmental body, then the claim must be resolved through the application of traditional rules of contract law" (Abiele, 91 NY2d at 7-8, quoting Matter of Goodstein Constr. Corp. v Gliedman, 117 AD2d 170, 176 [1st Dept 1986, Sandler, J.P., concurring], affd 69 NY2d 930 [1987]).
Because Mr. Dourdounas's claim arose exclusively from an alleged breach of the CBA, it must be resolved through the application of contract law, not through an article 78 claim.[FN5]
Employees who wish to allege a violation of the duty of fair representation and a violation of the collective bargaining agreement must do so through a plenary action alleging both a breach of the duty of fair representation and a breach of contract (see Obot, 89 NY2d at 886). The statute of limitations for an employee's action alleging a breach of a collective bargaining agreement and of the union's duty of fair representation is set out in CPLR 217 (2) (b). That provision establishes that where a breach of the duty of fair representation is an essential element of a claim, the statute of limitations is four months and accrues when the employee "knew or should have known that the breach [of the duty of fair representation] has occurred, or . . . suffers actual harm, whichever is later" (CPLR 217 [2] [b]). When an employee alleges that an employer breached the collective bargaining agreement and the agreement contains a mandatory grievance process, actual harm does not occur until the employee exhausts that process. That is because the grievance process is designed to adjudicate the dispute between the employer and employee.
[*4]IV.
As explained above, Mr. Dourdounas's claim is a purely contractual claim that was not properly brought under article 78. The Appellate Division therefore erred in applying CPLR 217 (1), which governs article 78 claims. But even if the claim could be properly brought under article 78, the Appellate Division's application of the exhaustion rules would still be incorrect. The exhaustion requirements applicable to an employee's claim depend on whether the collective bargaining agreement creates a mandatory grievance process that applies to that claim. If it does, the employee must exhaust the mandatory grievance process before bringing an article 78 petition (see Matter of Plummer v Klepak, 48 NY2d 486, 489 [1979]). In that event, the applicable statute of limitations, CPLR 217 (1), will not accrue until the employee pursues the mandatory grievance process as far as is possible. If, however, the grievance process is optional, taking advantage of it will not affect the running of the statute of limitations (see Kahn, 18 NY3d at 472).
The Appellate Division's reliance on Matter of Queensborough is misplaced because that case concerned a statutory claim that was not subject to a mandatory grievance process (Matter of Queensborough Community Coll. of City Univ of N.Y. v State Human Rights Appeal Bd., 41 NY2d 926, 926 [1977]). In Queensborough, an employee filed a statutory discrimination complaint based on the New York State Human Rights Law, approximately 20 months after she was informed that she would not be reappointed to her position as an assistant professor (Matter of Queensborough Community Coll. of City Univ. of N.Y. v State Human Rights Appeal Bd., State Div. of Human Rights, 49 AD2d 766, 766 [2d Dept 1975], affd 41 NY2d 926 [1977]). Prior to filing her discrimination claim, the employee{**44 NY3d at 43} had instituted a grievance on "entirely unrelated contractual grounds" (id.). We held that the unrelated grievance did not affect the statute of limitations on her statutory claim (Matter of Queensborough, 41 NY2d at 926). We did not hold that the collective bargaining agreement in Queensborough required the teacher to grieve her statutory discrimination claim, nor did it. Because Mr. Dourdounas raised a purely contractual claim that was subject to a mandatory grievance process, Queensborough does not apply.
Moreover, contrary to Mr. Dourdounas's contention, our cases regarding teachers dismissed during the probationary period are also inapposite. In those cases, the grievance process applicable to the statutory claims raised by petitioners was optional. In Matter of Frasier, we held that Education Law § 2573 (1) (a) gives the Board of Education "broad discretion" in dismissing probationary teachers and makes the Board's decision to dismiss a probationary teacher final (Matter of Frasier v Board of Educ. of City School Dist. of City of N.Y., 71 NY2d 763, 767 [1988]). We expressly stated that collective bargaining provisions creating a review process for probationary teachers who wished to challenge their dismissals did "no more than establish an optional procedure under which a teacher may ask the Chancellor to reconsider and reverse his initial decision" (id.). In Kahn, we applied our decision in Frasier to hold that the statute of limitations for a claim challenging the dismissal of a probationary teacher accrues when the teacher is dismissed. We further held that the probationary teacher challenging dismissal was not required to exhaust the optional internal review process before bringing a claim (Kahn, 18 NY3d at 472). Those cases stand for the proposition that resort to an optional grievance procedure does not affect the running of the statute of limitations. Here, the grievance process is mandatory, so Kahn does not apply.
V.
In contrast to Queensborough and Kahn, Mr. Dourdounas's claim was subject to a mandatory grievance process. Mr. Dourdounas was therefore required to exhaust the contractual grievance process. He did so. Because his claim arises solely under the CBA, Mr. Dourdounas was also required to follow the path laid out in our decision in Ambach. He did not. Under Ambach, Mr. Dourdounas could challenge the DOE's decision only through a plenary action alleging both a breach of the duty of{**44 NY3d at 44} fair representation and a breach of contract. Furthermore, a purely contractual claim like Mr. Dourdounas's should be brought in a plenary breach of contract action, not an article 78 petition. The statute of limitations for that plenary action did not begin to run until Mr. Dourdounas learned of the event constituting the UFT's alleged breach or when he suffered harm, whichever was later (see CPLR 217 [2] [b]).
The order of the Appellate Division should be affirmed, with costs.
Judges Rivera, Garcia, Singas, Troutman, Halligan and Fisher[FN*] concur. Judge Cannataro took no part.
Order affirmed, with costs.

Footnotes

Footnote 1:Separately, Mr. Dourdounas filed a charge against the UFT for violations of Civil Service Law § 209-a (2) (a) and (c) with the Public Employment Relations Board (see Matter of Dourdounas [United Fedn. of Teachers, Local 2, AFT, ALF-CIO], 56 PERB ¶ 3003 [Mar. 6, 2023]). Even so, in the proceeding before us, he has never alleged that the UFT breached its duty of fair representation.

Footnote 2:We have not had occasion to decide, in this context, whether an employee who has exhausted all grievance procedures required in a collective bargaining agreement must join the union in a suit against the employer or need only allege (and ultimately prove) that the union breached its duty of fair representation (see Matter of O'Reilly v Board of Educ. of the City Sch. Dist. of the City of N.Y., 42 NY3d 986, 991 [2024] [requiring the employee to join the union as a necessary party in a CPLR article 75 proceeding]). Under federal law, however, the employee is not required to join the union as a defendant in the suit against the employer, but may instead plead and prove a breach of the duty of fair representation without joining the union as a party (DelCostello v Teamsters, 462 US 151, 165 [1983]). That question is not conclusively settled as a matter of New York law and is irrelevant to our decision here, because Mr. Dourdounas neither joined the union nor alleged a breach of the duty of fair representation. When we say that Mr. Dourdounas did not "allege" a breach of the duty of fair representation, we are not opining on whether the union is a necessary party to such a suit. Inasmuch as Mr. Dourdounas failed to bring a plenary action, as our precedent requires, the issue of whether he would have needed to join UFT in that action is beyond the scope of this appeal.

Footnote 3:That rule is similar to the federal rule, under which an employee is bound by the result of a grievance or arbitration process "according to the finality provisions of the agreement," unless the employee can show a breach of the duty of fair representation (DelCostello, 462 US at 164).

Footnote 4:Our decision in Matter of Plummer v Klepak does not suggest otherwise (48 NY2d 486 [1979]). Our holding in that case was based on exhaustion and did not address the proper vehicle for judicial review.

Footnote 5:If Mr. Dourdounas had alleged a breach of the duty of fair representation, the court could have converted the article 78 proceeding to an action for breach of contract (see CPLR 103 [c]).

Footnote *:Designated pursuant to NY Constitution, article VI, § 2.